RECEIVED
ASHEVILLE, N.C.
SEP 17 2003
Clerk, U.S. Dist. Court
W. Dist. of N.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE-SHELBY DIVISION

No. 03 CV 237

| | |
|---|---|
| ROBERT LLOYD and MINIRE LLOYD<br>Plaintiffs, | )<br>)<br>) |
| | ) COMPLAINT |
| | ) Civil Action No. 1:03CV237 |
| v. | )<br>) |
| WAFFLE HOUSE INC.<br>Defendant. | )<br>)<br>)<br>) |

## INTRODUCTION

1. Plaintiffs Robert and Minire Lloyd, who are husband and wife, (collectively, "Plaintiffs" or "the Lloyds"), bring this Complaint against Defendant Waffle House, Inc. ("Defendant" or "Waffle House").

2. This lawsuit arises from Defendant's refusal to serve the Lloyds, on the basis of their race, in the Waffle House restaurant (Unit #736) located off Highway 108 in Columbus, Polk County, North Carolina ("the Columbus Waffle House" or "the Columbus Waffle House restaurant").

3. In refusing to serve the Lloyds, Waffle House has denied Plaintiffs the right to make and enforce contracts on the same basis as white citizens, in violation of 42 U.S.C. § 1981, and denied Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Columbus Waffle House restaurant, on the basis of race, in violation of 42 U.S.C. § 2000a.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000a-6.

5. Venue is proper in this Court, pursuant to 28 U.S.C. 1391(b), as Defendant resides within this Judicial District.

6. This action arises under the Commerce Clause of the Constitution of the United States, Article One, Section Eight, Clause Three, and under legislation appropriately enacted by the United States Congress to enforce the Thirteenth Amendment to the Constitution of the United States.

## PARTIES

7. Plaintiffs Robert Lloyd, an African-American male and Minire Lloyd a white female, are husband and wife and citizens of the United States and residents of Polk County, North Carolina.

8. Defendant Waffle House, Inc. is a Georgia corporation, with its principal place of business in Norcross, Gwinnett County, Georgia. Its corporate headquarters are located at 5986 Financial Drive, Norcross, Georgia. Defendant Waffle House conducts business throughout the United States, with approximately 1,400 restaurants and restaurant franchises in 26 states.

9. Defendant owned, operated and maintained control over the Columbus Waffle House restaurant at all times pertinent to this lawsuit. Defendant committed, authorized, sanctioned, ratified and approved the unlawful policies, action and conduct described and complained of in this Complaint.

## FACTS

10. On or around June 30, 2002, at approximately 1:15 a.m., Plaintiffs went to the Waffle House located off Highway 108 in Columbus, North Carolina. Mrs. Lloyd was 20 weeks pregnant and initially intended only to place a "to go" order.

11. Upon entering the restaurant, Mrs. Lloyd observed that the restaurant was not busy; there were vacant tables and empty seats at the counter. Two waitresses, both white females, and a cook, a white male were on duty at the time.

12. Waffle House claims that "customers enjoy sit down table service with the speed of delivery typically found at fast food establishments." It also describes its service as "fast friendly service."

13. Mrs. Lloyd entered the restaurant to place the to-go order, but decided that she and her husband should eat inside because the restaurant was not very crowded. Mrs. Lloyd went back outside to get her husband, and the two entered the store together.

14. The wait-staff clearly saw the Lloyds as they entered the restaurant. For approximately five minutes the Lloyds stood at the front of the restaurant waiting for assistance from staff. The Lloyds then took two of the vacant seats at the counter and waited for about ten minutes for service.

15. As the Lloyds waited, both waitresses on duty went into the back area of the store. The Lloyds, after receiving no service at the counter, moved to an empty table and waited.

16. The two waitresses returned to the front of the restaurant and resumed waiting on customers who were already in the restaurant as well as other customers who had come in after the Lloyds. Mr. Lloyd was the only African American in the restaurant during the time of the

3

Lloyds visit. During this time, no Waffle House employees approached the Lloyds to offer service.

17. After about 45 minutes of receiving no service, Mrs. Lloyd approached the counter. The waitress at the counter turned to Mrs. Lloyd and said, in a very rude manner, "Can I help you with something?" However, the waitress directed her attention to someone else before Mrs. Lloyd could respond.

18. The Lloyds left the restaurant almost immediately after Mrs. Lloyd was rebuffed.

19. The next day, the Lloyds contacted the manager of the Columbus Waffle House to register a complaint about the refusal of service they experienced the previous morning. The manager assured Plaintiffs that he would investigate the matter and contact them again. However, the manager never contacted the Lloyds again.

20. Mrs. Lloyd subsequently contacted the Waffle House corporate offices in Georgia to register a complaint. On July 2, Waffle House mailed Mrs. Lloyd a letter and questionnaire regarding a claim of sexual harassment in the workplace. Mrs. Lloyd contacted Waffle House and reported the mistaken mailing. On or about July 15, Waffle House sent Mrs. Lloyd a questionnaire from its "Let Us Know" Department. The letter from Waffle House said that the assigned investigator would "get in touch with her as soon as she has received your completed questionnaire."

21. On July 18, the Lloyds completed and returned the questionnaire to Waffle House as requested. The Lloyds were not contacted by an investigator from Waffle House until receiving a letter on or about July 26.

22. The Lloyds received a letter dated July 26, 2002, from Waffle House. In the letter, Case Manager Audrey Tasssinari states that she "spoke with every available employee who was on duty at the time of the incident as well as the manager of the unit."

23. The Waffle House case manager reported "our investigation revealed that the restaurant was busy and your waitress who was recently hired, became overwhelmed when the restaurant became overcrowded."

24. The letter did not attempt to explain Waffle House's conclusion that the restaurant was overcrowded in light of the contrary report of the Lloyds in the Waffle House questionnaire. To the question, "Was the restaurant crowded?" the Lloyds answered, "No." Similarly, in response to the question, "Were others waiting to be seated when you arrived?" the Lloyds responded, "No."

25. The letter did not explain how Waffle House responded to the Lloyd's allegation in the questionnaire that the staff's "conduct was horrible," and that "[y]our staff made me walk out of there feeling like I'm not a person." Instead, Waffle House simply announced the conclusion, "Nothing was done personally to over look you or not to serve you promptly."

26. Waffle House did not explain why its case manager did not seek to interview the Lloyd's regarding their experience at the Columbus Waffle House. Instead the Waffle House letter enclosed a $20 coupon redeemable at any Waffle House restaurant.

27. Within days of receiving the letter from Waffle House, Mrs. Lloyd called the case manager to discuss the investigation. She was referred to a lawyer in the Waffle House legal department. That lawyer repeated the conclusion that the "poor service" the Lloyd's experience was the result of the restaurant being busy and the workers overwhelmed and was did not reflect

any discriminatory intent. Mrs. Lloyd was told that she could call back and discuss her factual disputes with the assigned case manager.

28. Mrs. Lloyd called Waffle House again to talk with the case manager. The case manager repeated the conclusions in her letter. The case manager said she was offended by the accusations made in the Lloyd's complaint. The case manager said that the Lloyd complaint was the first claim of racism received by Waffle House. The case manager kept repeating that the restaurant was full during the Lloyd visit. Mrs. Lloyd explained that she and her husband were at the restaurant and there were only a handful of tables occupied, and that the two waitresses spent several minutes in the back of the restaurant not attending to customer service while they were there.

29. Mrs. Lloyd handed the telephone to her husband so that he could attempt to describe their experience to the case manager. The case manager again repeated the conclusions reached in the letter, that the experience reflected simply bad service not racism. Mr. Lloyd said that he understood bad service having worked in the restaurant industry for several years, but what he experienced was a deliberate refusal of service.

## COUNT I
(Violation of 42 U.S.C. § 1981)

30. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 21 above, as if set forth fully herein.

31. At all times material to this action, Plaintiffs, while seeking food and services from Defendant, presented themselves in a fit and proper manner, both in terms of dress and conduct.

32. Defendant refused to serve, or otherwise denied, Plaintiffs food and services because of their race.

6

33. At all times relevant to the events described in this Complaint, the waitresses, customer service personnel, supervisor(s), manager(s) and other employees of Waffle House were acting within the scope of their employment and were acting in their capacities as employees, agents and/or representatives of Defendant.

34. The discriminatory practices described in this Complaint were carried out a) at the direction of and with the consent, encouragement, knowledge, and ratification of Defendant; b) under Defendant's authority, control and supervision; and/or c) within the scope of the employees' employment.

35. Defendant's actions were undertaken intentionally and purposefully, with racially discriminatory animus, for the purpose of denying Plaintiffs equal treatment on the basis of their race. Defendant acted maliciously, in bad faith, and with willful, callous, wanton and reckless disregard for Plaintiffs' federally-protected rights.

36. Defendant treated similarly situated white persons differently from Plaintiffs.

37. Defendant failed to conduct a full and adequate investigation of the Lloyd's complaint.

38. By the actions described in this Complaint, Defendant has denied Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens of the United States, in violation of 42 U.S.C. § 1981.

39. By the actions described in this Complaint, Defendant has denied Plaintiffs of their right to make, perform, modify and terminate contracts on the same basis as white persons, and deprived Plaintiffs of the enjoyment of the benefits, privileges, terms and conditions of a contractual relationship.

7
Case 1:03-cv-00237-LHT   Document 1   Filed 09/15/03   Page 7 of 11

40. As a proximate result of the actions of Defendant described in this Complaint, Plaintiffs have suffered, continue to suffer, and will, in the future, suffer great and irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress and mental anguish.

41. In addition, Defendant engages in a pattern and practice of discriminating against African-Americans in the provision of food and services.

42. Defendant knowingly authorizes, assists, encourages and condones the discriminatory conduct described in this Complaint by, among other things, managerial authorization of, and participation in, discrimination and otherwise failing to investigate and address adequately numerous occurrences and complaints of discrimination.

## COUNT II
(Violation of 42 U.S.C. § 2000a)

43. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 34 above, as if set forth fully herein.

44. The Columbus Waffle House restaurant is a "place of public accommodation" within the meaning of 42 U.S.C. §2000a.

45. The operations of the Columbus Waffle House affect commerce within the meaning of 42 U.S.C. §2000a. The Columbus Waffle House serves or offers to serve interstate travelers and/or a substantial portion of the food which it serves, or other products which it sells, have moved in interstate commerce.

46. Plaintiffs have met all administrative requirements, if any, prior to filing this action.

8
Case 1:03-cv-00237-LHT   Document 1   Filed 09/15/03   Page 8 of 11

47. But for Defendant's discriminatory practices, Plaintiffs could, and would, visit a Waffle House restaurant in the future.

48. Plaintiffs attempted to afford themselves of the full benefits and enjoyment of a public accommodation, but Defendant has denied Plaintiffs the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, on the basis of race, in violation of 42 U.S.C. §2000a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court grant them relief as follows:

(a) enter a declaratory judgment finding that the actions of Defendant as alleged in this Complaint violated 42 U.S.C. §§ 1981 and 2000a;

(b) enter a permanent injunction barring Defendant from continuing to engage in illegally discriminatory conduct against the Lloyds and other African-Americans who might visit a Waffle House restaurant in the future;

(c) enter a permanent injunction directing that Defendant take all affirmative steps necessary to remedy the effects of the illegally discriminatory conduct alleged in this Complaint and to prevent repeated occurrences in the future;

(d) award compensatory damages in an amount that would fully compensate Plaintiffs for their damages, including but not limited to, humiliation, embarrassment, emotional distress, and mental anguish, caused by Defendant's violations of the law, as alleged in this Complaint;

(e) award punitive damages to Plaintiffs in an amount that would punish Defendant for the intentional, malicious, callous, bad faith, willful, wanton and reckless misconduct alleged

9
Case 1:03-cv-00237-LHT   Document 1   Filed 09/15/03   Page 9 of 11

in this Complaint and that would effectively deter Defendant from future discriminatory behavior;

    (f)    award Plaintiffs their attorneys' fees and costs; and

    (g)    order all other relief deemed just and equitable by the Court.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable as of right.

Dated: 9/15/03

ROBERT and MINIRE LLOYD

By: /s/
Henderson Hill, NC Bar No. 18563
Corié D. Pauling, NC Bar No. 24948
FERGUSON, STEIN, CHAMBERS,
ADKINS, GRESHAM & SUMTER
741 Kenilworth Avenue, Suite 300
Charlotte, North Carolina 28204-2828
Phone: 704/375-8461
Facsimile: 704/334-5654


Gerald S. Hartman, DC Bar No. 168484
Wendelyn L. Pizer, DC Bar No. 479372
DRINKER BIDDLE & REATH LLP
1500 K Street, N.W., Suite 1100
Washington, DC 20005-1209
Phone: 202/842-8800
Facsimile: 202/842-8465

Thomas J. Barton, PA Bar No. 50603
DRINKER BIDDLE & REATH LLP
One Logan Square
18th & Cherry Streets
Philadelphia, PA 19103-6996
Phone: 215/988-2700
Facsimile: 215/988-2757

Susan E. Huhta
WASHINGTON LAWYERS' COMMITTEE
FOR CIVIL RIGHTS AND URBAN AFFAIRS
11 Dupont Circle NW, Suite 400
Washington DC 20036
Phone: 202/319-1000
Facsimile: 202/319-1010

*Counsel for Plaintiffs*

11